**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DWAYNE WALLACE,

                                    Plaintiff,                    9:24-cv-446
                                                                  (ECC/TWD)
v.

DAVID DINELLO, *et al.*,

                                    Defendants.

---

Amy J. Agnew, Esq., *for Plaintiff*
Aimee Cowan, Asst. Attorney General, *for Defendant Dinello*
Ryan T. Donovan, Esq., *for Defendants Mannava, Chaudhry, and Mohammed*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

On March 29, 2024, Plaintiff Dwayne Wallace initiated this action pursuant to 42 U.S.C.

§ 1983 alleging claims of deliberate indifference under the Eighth Amendment against Defendants

David Dinello, Venkata Mannava, Shazia Chaudhry, Asma Mohammed, and Carol Moores.

Complaint (Compl.), Dkt. No. 1.[1]  Presently before the Court is Defendant Dinello's motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 30.  The

motion is fully briefed.  Dkt. Nos. 30-1, 35, 36.  For the following reasons, the motion to dismiss

is granted, to the extent the complaint is dismissed without prejudice as against Defendant Dinello.

---

[1] On June 24, 2024, Plaintiff filed a notice of voluntary dismissal as to Defendant Moores.  Dkt.
No. 28.  Defendants Mannava, Chaudhry, and Mohammed filed an answer on June 25, 2024, Dkt.
No. 29; the claims against them are not addressed here.

I.    FACTS[2]

A.    Medications With Abuse Potential Policy

Plaintiff was held in the custody of the New York State Department of Corrections and Community Supervision (DOCCS) from 2018 to 2021. He alleges that the discontinuation and denial of effective medication, pursuant to DOCCS policy, without an individualized assessment of his needs constitutes deliberate indifference. Compl. at ¶¶ 315-18, 321, 324-25, 342-43.

DOCCS' "policy on Medications With Abuse Potential" (MWAP) was drafted by Defendant Dinello and promulgated on June 2, 2017. Compl. at ¶¶ 145-46.[3] On its MWAP list, "DOCCS included a group of . . . ubiquitous medications, including" the medication at issue here: Neurontin (also known as Gabapentin), "an anticonvulsant generally taken to control seizures" and "often prescribed to relieve nerve pain." *Id.* at ¶¶ 78, 88.[4] The medications on the MWAP list "are not risk free," and "[l]ike any medication they can be abused, but many of them—including Neurontin . . . —are considered to have low addiction potential." *Id.* at ¶ 98. "DOCCS, its physicians and mid-level clinicians have been aware of the risks of these medications for decades." *Id.* at ¶ 100.

---

[2] These facts are drawn from the complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The MWAP policy was codified as DOCCS Health Services Policy 1.24, "Medications with Abuse Potential." Plaintiff alleges that DOCCS allowed Defendant Dinello to draft this policy despite his lack of specialized training in addiction issues, and his guilty plea following charges in 2010 by the New York State Department of Health State Board of Professional Medical Conduct of "failing to adequately evaluate patients prior to discharge from an emergency room." Compl. at ¶¶ 136–46.

[4] Although Plaintiff appears to allege that Neurontin was in a 2019 Formulary Book and was therefore available to doctors to prescribe without approval from an administrator, Compl. at ¶¶ 39–40, 42, Plaintiff's allegations as to the Medications With Abuse Potential policy and related customs suggest that the MWAP policy altered these practices.

Under the MWAP policy, a provider "submitted the MWAP Request Form" to the Regional Medical Director (RMD) in charge of their hub.  Compl. at ¶ 159.  The MWAP Request Form "asked for relevant health information regarding the patient, the justification for use of the medication and a list of any alternatives tried to treat the medical issue." *Id.* at ¶ 160.  The MWAP Request Form "also asked if there is any recent evidence of drug diversion or abuse by the patient." *Id.* ¶ 161.  "Based on the MWAP Request Form contents—the RMD and not the patient's medical provider—determined whether a patient will receive an MWAP." *Id.* at ¶ 164.  The treating physicians and mid-level clinicians "had to discontinue an MWAP prescription if it was not approved by the RMD[,]" "pharmacies would not fill a prescription for an MWAP without RMD approval[,]" and providers "had no ability to provide the medication once an RMD refused to approve the prescription." *Id.* at ¶ 168.

The MWAP policy "had the immediate impact of abruptly discontinuing the effective treatment of hundreds of inmates on MWAPs[.]"  Compl. at ¶ 174.  "As implemented, the MWAP Policy was an almost wholesale restriction on the prescription of MWAPs, except in cases of acute need or palliative care." *Id.* at ¶ 107.  This stands in contravention of the positions of several other agencies, such as the National Commission on Correctional Health Care, of which DOCCS is an accredited member, that published a position statement directing that "[c]linicians should not approach the treatment of chronic pain as a decision regarding the use or nonuse of opioids (as in acute pain)[;] [r]ather clinicians should consider all aspects of the problem and all available proven modalities[,]" and "[p]olicies banning opioids should be eschewed." *Id.* at ¶¶ 107–11.  Similarly, the Federal Bureau of Prisons' (BOP) Clinical Guideline does not prohibit use of opioids or neuromodulating medications like Neurontin but instead "lists Neurontin . . . as [a] second line treatment[] for neuropathic pain." *Id.* at ¶¶ 112–13.  The American Correctional Association, by

which DOCCS is accredited, "lists the BOP's Clinical Guideline . . . as its clinical guideline standard." *Id.* at ¶ 114. The New York State Department of Health "has only two main concerns regarding Neurontin/Gabapentin: it recommended avoiding prescriptions in doses higher than 3600 mg per day because there is no evidence of increase in therapeutic dose, and it recommended avoidance of use of Neurontin by a patient benefiting from concurrent opioid treatment." *Id.* at ¶ 115. The American Medical Association "also does not restrict the prescription of many of the medications on the MWAP list." *Id.* at ¶ 116. In fact, "[t]he standard in the medical community is to use medications like Neurontin . . . and other non-opioid MWAPS to treat chronic conditions to reduce the number of opioid prescriptions;" "[t]he standard in the medical community is not to restrict all effective treatment." *Id.* at ¶ 118.

In February 2021, "as a direct result of class action litigation, DOCCS . . . rescinded the MWAP Policy and promulgated a new policy[,] 1.24A," entitled "Prescribing for Chronic Pain." Compl. at ¶ 286.[5] "The new policy demanded 'Pain management medication should only be discontinued after a provider has met with the patient, discussed the issues regarding the use of the medication, analyzed the patient's situation, and subsequently determined that it is in the best interest of the patient for the medication to be discontinued.[']" *Id.* at ¶ 287.

### B.    Plaintiff's Medical Issues

Plaintiff entered DOCCS's custody in 2018 with an active prescription for Gabapentin to treat his diabetic neuropathy. Compl. at ¶ 314. Immediately after Plaintiff's intake, a DOCCS medical provider "discontinued his Gabapentin prescription without an examination or even seeing" Plaintiff. *Id.* at ¶ 315. "The provider did not even submit an MWAP Request to [Plaintiff's

---

[5] Plaintiff appears to be referring to class-action litigation in the Southern District of New York challenging the MWAP policy. *See Allen v. Koenigsmann*, No. 19-cv-8173 (S.D.N.Y.).

RMD] to request the medication; he merely discontinued it without an individualized assessment." *Id.* at ¶ 316. Plaintiff began to "suffer without treatment for his diabetic neuropathy." *Id.* at ¶ 317. "At the same time, [Plaintiff] noticed a lump in his throat," which he brought to the attention of his DOCCS provider "on multiple occasions." *Id.* at ¶ 318.

In December of 2019, Plaintiff was transferred to Midstate Correctional Facility and the care of Defendants Mannava, Chaudhry, and Mohammed. Compl. at ¶ 319. "After months of complaint without real response," Plaintiff was diagnosed with "stage 4 head and throat cancer[.]" *Id.* at ¶ 320. He began radiation and chemotherapy treatment at Upstate Medical Center (Upstate) five days a week. *Id.* Plaintiff's specialty providers at Upstate "repeatedly requested that he be treated for his chronic pain stemming from his cancer treatment with MWAP medications." *Id.* at ¶ 321. Defendants Mannava, Chaudhry, and Mohammed "submitted MWAP request forms to [Defendant Dinello] requesting to prescribe [Plaintiff] the MWAP medications recommended by his specialists at" Upstate. *Id.* at ¶ 324. Defendant Dinello refused the prescriptions without ever examining Plaintiff or reviewing his medical records. *Id.* at ¶ 325. Defendants Mannava, Chaudhry, and Mohammed "never advocated for [Plaintiff], never provided [Defendant] Dinello with more information upon which to base his decision, nor did they appeal to the Chief Medical Officer for intervention[.]" *Id.* at ¶ 326. "During the course of his treatment, [Plaintiff] lost over [fifty] pounds and suffered daily, unrelenting chronic pain and neuropathy[.]" *Id.* at ¶ 327.

In early 2020, Plaintiff filed a grievance complaining of the lack of care for his chronic pain, as well as the Defendants' failure to follow the recommendations of his specialists at Upstate. Compl. at ¶ 328. Plaintiff also requested that Defendants coordinate his treatment and medication regimen with his specialists. *Id.* at ¶ 329. The grievance response emphasized that although outside specialists may make recommendations for treatment, the implementation of those

recommendations is at the discretion of the Facility Health Services Directors based on their professional judgment. *Id.* at ¶ 330.

Plaintiff filed another grievance in early 2021 requesting proper treatment. Compl. at ¶ 333. The Superintendent's response stated, "Narcotics for pain relief are not indicated or authorized; however, [over the counter] pain medication can be given for pain treatment/relief[.]" *Id.* at 334. However, "indication" for use of MWAP medications had been "repeatedly recommended by [Plaintiff's] providers at Upstate." *Id.*

Plaintiff was released from prison in 2021. Compl. at ¶ 337. Upon release, he obtained treatment including the restoration of "MWAP treatment" for his chronic pain conditions. *Id.* at ¶¶ 338-39.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

Defendant Dinello argues that Plaintiff's claim is time-barred and must therefore be dismissed.  Dkt. No. 30-1 at 4–6.[6]  Plaintiff argues that he is entitled to application of the continuing violation doctrine.  Dkt. No. 35 at 5–6.  In reply, Defendant argues that Plaintiff has not alleged acts of Defendant within the relevant period that would render the continuing violation policy applicable.  Dkt. No. 36 at 1–4.

"The statute of limitations for § 1983 actions arising in New York is three years." *Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and [for an Eighth Amendment deliberate indifference claim] is the three-year period for personal injury actions under New York State law.").  "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'"  *Shomo*, 579 F.3d at 181 (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

However, the "continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date,'" *Shomo*, 579 F.3d at 181 (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)), which the Second Circuit has applied to Eighth Amendment deliberate indifference claims, *see Williams v. Annucci*, No. 20-cv-1417, 2021 WL 4775970, at *3 (N.D.N.Y. Oct. 13, 2021) (collecting cases).  The continuing violation doctrine "applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [] practice.'"

---

[6] Defendant Dinello also argues that Plaintiff's claim is not subject to tolling.  Dkt. No. 30-1 at 6-7.  Plaintiff does not challenge this argument in his opposition papers, thus waiving any argument as to tolling.  *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) ("failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.") (citing *Kao v. British Airways, PLC*, No. 17-cv-0232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018)).

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration in original) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)).  "To assert a continuing violation for statute of limitations purposes" in the context of an Eighth Amendment claim for deliberate indifference, "the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.'"  *Shomo*, 579 F.3d at 182 (alteration in original) (quoting *Harris*, 186 F.3d at 250).  This is because "[w]hen the plaintiff brings a Section 1983 claim challenging a . . . policy [of deliberate indifference], 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'"  *See id.* at 181 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).  The continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken "pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).  Furthermore, a plaintiff cannot establish a continuing violation merely because he "continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250. "[T]he federal courts look unfavorably on continuing violation arguments, and have applied the theory only under 'compelling circumstances,' " including where:

> the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an 'express, openly espoused policy that is alleged to be discriminatory;' or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness.

*Yip v. Bd. of Trs.*, No. 03-cv-00959C, 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004) (citations omitted).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the

defense appears on the face of the complaint." *See Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).  In the context of an alleged continuing violation, if a plaintiff alleges "some [] act that did occur within the statute of limitations, so that his claim would not be time-barred," *Harris*, 186 F.3d at 250, and "[t]he complaint suggests a pattern" of deliberately indifferent treatment, *see Shomo*, 579 F.3d at 182, an Eighth Amendment claim for deliberate indifference can withstand a challenge for failure to state a claim. However, where a plaintiff brings a claim against multiple defendants, the plaintiff must allege a non-time-barred act as to each defendant.  *See Shomo*, 579 F.3d at 183 ("The continuing violation doctrine does not apply to the claim against [the individual defendant] because there is no indication that [the plaintiff] is able to allege acts involving [that defendant] that fall within the three-year statutory period."); *Lucente*, 980 F.3d at 310 (holding that Section 1983 claims could proceed against certain individual defendants "as long as each plaintiff alleged an unconstitutional act committed by each particular defendant that falls within the three-year statutory period").

Here, Plaintiff has sufficiently alleged the existence of an ongoing policy of deliberate indifference to his serious medical needs, for purposes of satisfying the first requirement of the continuing violation doctrine.  *See Shomo*, 579 F.3d at 182 (citing *Harris*, 186 F.3d at 250). Specifically, the complaint suggests that DOCCS implemented a series of policies directed at "discontinuing patients from medications that DOCCS' medical administrators felt had abuse potential irrespective of a patient's individualized needs" and without further medical justification. *See generally* Compl.

Nevertheless, Plaintiff's reliance on the continuing violation doctrine fails at the second requirement.  Plaintiff filed his complaint on March 29, 2024, therefore any claims premised on

deliberate indifference by Defendant Dinello occurring outside the three-year statutory period, i.e. before March 29, 2021, would generally be untimely.  If, however, Plaintiff alleged that Defendant Dinello committed some act in furtherance of an ongoing policy of deliberate indifference after the March 29, 2021 accrual date, Plaintiff's claim may be timely pursuant to the continuing violation doctrine.

On this point, Plaintiff alleges, generally, that Defendant Dinello recieved requests from DOCCS medical providers to prescribe Plaintiff the MWAP medications recommended by his specialists at Upstate, and that Defendant Dinello "refused the prescriptions without ever examining [Plaintiff] or reviewing his medical records."  Compl. at ¶¶ 324-25.  Plaintiff asserts these allegations "[u]pon information and belief," without identifying the specific date(s) of Defendant Dinello's denials.  *Id.*  Nevertheless, given the chronological order of Plaintiff's allegations, a plain reading of the complaint suggests that Defendant Dinello denied the MWAP requests prior to Plaintiff filing a grievance in "early 2020."  *Id.* at ¶ 328.[7]  Plaintiff further concedes that after Defendant Dinello denied the MWAP requests, Plaintiff's DOCCS medical providers "never provided [Defendant] Dinello with more information upon which to base his decision." Compl. at ¶ 326.  Accordingly, because Plaintiff does not allege that Defendant Dinello had any involvement with his treatment, much less engaged in a specific act in furtherance of the MWAP policy, after "early 2020," Plaintiff cannot invoke the benefit of the continuing violation doctrine.

---

[7] In Plaintiff's opposition to the pending motion he does not refute this interpretation of the allegations in his complaint even though Defendant relies on it.  *See* Plaintiff's Memorandum of Law at 5-6, Dkt. No. 35.

Plaintiff argues that the continuing violation doctrine applies because, during the relevant three-year statutory period, Defendant Dinello was generally "aware of the on-going violations of patients' rights . . . yet, he never followed up with patients whose medications were discontinued and denied, including [Plaintiff]." Plaintiff's Memorandum of Law at 6, Dkt. No. 35. This argument, however, is belied by Plaintiff's allegations that his DOCCS medical providers never provided Defendant Dinello with additional information regarding the MWAP denials after early 2020 or appealed his denials. *See* Compl. at ¶ 326. There is no other conduct alleged involving Defendant Dinello that falls within the three-year statutory period. Thus, even construing the complaint in the light most favorable to the Plaintiff, there is no allegation that Defendant Dinello acted in furtherance of the policy of deliberate indifference relative to Plaintiff's treatment after March 29, 2021.

Plaintiff's reliance on the Second Circuit's decision in *Lopez v. Annucci,* 690 F. App'x 56 (2d Cir. 2017), is misplaced. In *Lopez*, the district court dismissed the pro se plaintiff's claims with prejudice as time-barred, without ever considering the applicability of the continuing violation doctrine. *Id.* at 58. On appeal, the Second Circuit concluded that the complaint should have been construed as alleging an ongoing policy of deliberate indifference, in satisfaction of the first requirement under the continuing violation doctrine, and the district court therefore erred in not assessing whether the doctrine rendered plaintiff's claims timely. *Id.* at 58-59. Here, after an express consideration of the applicability of the continuing violation doctrine to the counseled Plaintiff's complaint, the court finds that there is simply no allegation of conduct by Defendant Dinello within the applicable period that would render his claim timely.

Accordingly, Defendant Dinello's motion to dismiss is granted, to the extent that Plaintiff's complaint is dismissed without prejudice to the filing of an amended complaint that pleads facts

sufficient to plausibly show that any claim against Defendant Dinello is not barred by the statute of limitations.[8]

## IV.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss under Rule 12(b)(6), Dkt. No. 30, is **GRANTED**; and it is further

**ORDERED** that the complaint, Dkt. No. 1, is **DISMISSED** without prejudice as to Defendant David Dinello.

**IT IS SO ORDERED.**

Dated: February 7, 2025

Elizabeth C. Coombe
U.S. District Judge

---

[8] Rule 15(a)(2) requires that a court freely give leave to amend when justice so requires, "and courts have liberally construed this directive." *Shariff v. Amanda Realty, Inc.*, No. 11-cv-2547, 2013 WL 5522444, at *4 (E.D.N.Y. Sept. 30, 2013) (citations omitted).